UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

BETH KRAMER, on behalf of herself and
all others similarly situated,

                Plaintiff,

        v.

AZAZIE, INC.,

                Defendant.
-----------------------------------------------------------------

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, BETH KRAMER**,** ("Plaintiff" or "Ms. Kramer"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, AZAZIE, INC., ("AZAZIE" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.    Plaintiff, Beth Kramer**,** is a resident of New York, New York, and is permanently disabled due to advanced Macular Degeneration complicated by Retinal Detachment, resulting in profound central vision loss. As documented by Dr. Kyle Kovacs, MD**,** St. Giles Associate Professor of Clinical Ophthalmology at Weill Cornell Medicine, on April 12, 2025, Ms. Kramer's best-corrected visual acuity measures 20/320 in the right eye and 20/280 in the left eye, with severe central field loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field constricted to approximately 15–18 degrees**.** These findings meet the statutory definition of legal blindness under both federal and New York State law. (See Exhibit A.)

2.    Due to her permanent and progressive visual impairment, Ms. Kramer relies

1

exclusively on screen-reading software, including **NonVisual Desktop Access ("NVDA")**, to navigate digital interfaces, read product information, and complete online transactions. NVDA's ability to interpret properly coded websites is essential to her ability to access goods and services on equal terms with sighted consumers.

3.      Plaintiff brings this civil action against **Azazie, Inc.**, the owner and operator of the public-facing retail website www.azazie.com, which offers nationwide access to formalwear, bridalwear, mother-of-the-bride dresses, suits, accessories, and related apparel. The website functions as a primary platform for browsing products, reviewing descriptions, selecting sizes and colors, accessing promotions, and completing purchases. For blind consumers who rely on assistive technology, the accessibility of this website is essential to participating in online retail on equal terms with sighted users.

4.      On **December 15, 2025**, **December 16, 2025**, and **January 7, 2026**, Ms. Kramer attempted to use www.azazie.com with NVDA to browse and purchase a dress to wear to her daughter's upcoming high school graduation. Her attempts included navigating the "Mother of the Bride & Groom" and "Formal & Evening" categories, opening individual product pages, reviewing product descriptions, and selecting sizes and colors. She specifically attempted to access product pages including the **Azazie Lawrence Dark Navy A-Line Pleated Stretch Satin Dress** (URL: https://www.azazie.com/products/azazie-lawrence-dark-navy-a-line-pleated-stretch-satin-floor-length-mother-of-the-bride-dress/83127220).

5.      During each visit, Ms. Kramer encountered numerous accessibility barriers that prevented NVDA from reading or interpreting essential content. These barriers included:

• missing or placeholder alternative text on product images;

2

• ARIA-hidden elements containing focusable content that caused NVDA to announce silence;

• buttons, links, and controls lacking accessible names;

• nested interactive elements that prevented NVDA from announcing roles and states;

• product carousels without accessible labels;

• CSS positioning that caused reading order to diverge from visual order;

• autoplaying media without pause controls; and

• pricing information not programmatically conveyed.

These issues disrupted reading order, obscured product information, and made it impossible for her to understand or interact with key features of the website.

6.     A SortSite audit of [www.azazie.com](www.azazie.com) identified **systemic accessibility failures** across more than **1,000 pages**, including:

• **1,039 pages** with placeholder or incorrect alt text;

• **1,033 pages** with ARIA-hidden containers containing focusable elements;

• **1,034 pages** with nested interactive controls;

• **344 pages** with mismatched visual labels;

• pages with CSS absolute positioning that breaks reading order;

• pages with autoplaying GIFs running for **2,147,483,647 ms**;

• unlabeled links and form controls;

• missing or empty headings; and

• inaccessible product carousels and promotional banners.

These findings reflect systemic structural and coding issues across product pages,

3

category listings, promotional content, and navigation components.

7.    Ms. Kramer sought to use Azazie.com because it offers a wide selection of formalwear appropriate for her daughter's graduation and other family events. As a legally blind consumer, she cannot visually inspect product images or printed materials. She relies on accessible online product descriptions, pricing information, and navigation features to make informed purchasing decisions. When essential product information is conveyed visually but not programmatically, she cannot independently understand or evaluate the items offered.

8.    Azazie, Inc. is a retail company headquartered in San Jose, California, and operates the website www.azazie.com, which is accessible to consumers nationwide, including residents of New York. The company controls the design, coding, maintenance, and operation of the website and is responsible for ensuring that its digital content is perceivable and navigable for users who rely on assistive technology.

9.    Despite operating a large-scale e-commerce platform with extensive digital infrastructure, the website contains numerous accessibility barriers documented across thousands of pages. These issues appear in core shopping categories, product grids, promotional banners, navigation menus, and interactive components. The volume and distribution of these barriers indicate that accessibility considerations have not been consistently implemented across the site's design and content.

10.    Because Ms. Kramer relies on NVDA to access online retail platforms, the presence of these barriers prevents her from independently browsing, reviewing, and selecting products on www.azazie.com. Missing alt text, unlabeled controls, broken links, inaccessible pricing information, and improperly structured content impede her ability to understand product

details, compare items, or complete transactions. Without accessible coding practices, she cannot use the website in a meaningful or reliable way.

11.    The audit findings and Ms. Kramer's user experience demonstrate that Azazie.com contains widespread accessibility issues that interfere with the ability of blind and visually impaired users to navigate the site, understand product information, and interact with essential features. These barriers affect the usability of the website for individuals who depend on screen-reading technology and limit their ability to participate in online retail on equal terms with sighted consumers.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

13.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant AZAZIE, INC., conducts substantial, continuous, and systematic business within this District through its highly interactive, public-facing Website, www.azazie.com. Plaintiff repeatedly accessed and attempted to use the website from her residence in New York County, which lies within the Southern District of New York ("SDNY"). A significant portion of the

5

discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online information and services—occurred within this District.

15.    Defendant purposefully avails itself of the privilege of conducting business in New York by marketing, advertising, and selling its products directly to New York consumers through its Website. Defendant ships merchandise to New York, processes payments from New York residents, and transmits digital content, files, and data to consumers located in this District. Courts have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.,* 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.,* No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).Defendant is registered to do business in New York State and has been conducting business in New York, including within this District.

16.    Thus, jurisdiction and venue are appropriate in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

17.    Plaintiff Beth Kramer is a legally blind resident of New York, New York. Due to advanced Macular Degeneration complicated by Retinal Detachment, Ms. Kramer experiences profound central vision loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field of approximately 15–18 degrees. She relies exclusively on screen-reading software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions.

18.    Defendant Azazie, Inc. is a Delaware corporation with its principal place of business located at 100 Century Center Court, Suite 330, San Jose, California 95112. Azazie, Inc. owns, operates, controls, and maintains the commercial website www.azazie.com, which offers formalwear, prom and homecoming dresses, women's suits, accessories, and related apparel to consumers nationwide, including residents of New York.

19.    Defendant markets, advertises, and sells its products directly to New York consumers through its Website, processes payments from New York residents, and ships merchandise into this District. Defendant's Website is a highly interactive digital platform that enables consumers to browse products, review descriptions, select sizes and colors, access promotions, and complete purchases. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

20.    At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers

7

located here.

## **NATURE OF ACTION**

21.     This action arises under Title III of the Americans with Disabilities Act**,** 42 U.S.C. § 12181 *et seq.,* challenging Defendant's operation of a public-facing commercial website that denies blind and visually impaired individuals full and equal access to its goods, services, and digital content. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple, programmatically detectable access barriers that prevented meaningful engagement with its products and services. Defendant's failure to design, construct, and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA constitutes unlawful discrimination and violates federal accessibility standards.

22.     The Internet has become an essential tool for daily life, serving as a primary means of obtaining healthcare information, researching medical conditions, accessing pharmaceutical guidance, communicating with providers, and navigating essential goods and services. This is true for sighted individuals and blind or visually impaired individuals alike. For blind consumers, accessible websites are not a convenience—they are a **necessity** for independent living, informed healthcare decision-making, and equal participation in modern commerce.

23.     Blind and visually impaired individuals access websites using keyboards in conjunction with screen-reading software that vocalizes visual content or displays it on a refreshable Braille device. This technology is the only method by which blind individuals can independently navigate the Internet. Unless websites are properly coded to interface with screen-reading software, blind users cannot perceive or interact with the information, products, or

services offered online.

24.     Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

25.     Plaintiff, Beth Kramer, is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., the NYSHRL, and the NYCHRL. Due to advanced Macular Degeneration complicated by Retinal Detachment, Plaintiff suffers from profound central vision loss, dense scotomas, and markedly reduced contrast sensitivity. She relies exclusively on NVDA to access digital content, including e-commerce websites such as Defendant's.

26.     For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. As explained in *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017), screen-reading software "translates the visual Internet into an auditory equivalent," allowing blind users to navigate websites through auditory cues rather than visual ones. When websites lack proper coding, these cues disappear, rendering the site unusable. According to the American Foundation for the Blind, approximately twenty-six million American adults report significant visual impairment, underscoring the widespread need for accessible digital design.

27.     The World Wide Web Consortium ("W3C") has published WCAG 2.0 and 2.1, internationally recognized standards for digital accessibility. These guidelines are widely adopted

by private entities and government agencies, including the U.S. Department of Justice, and have

been repeatedly recognized by federal courts as the appropriate benchmark for ADA compliance.

28.    Non-compliant websites pose recurring and predictable barriers to blind and

visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements;

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible Portable Document Format (PDF) files;

q. User interface elements whose roles, states, and values cannot be programmatically

determined or conveyed to assistive technology.

<u>STATEMENT OF FACTS</u>

29.     Plaintiff **Beth Kramer** is a legally blind resident of New York, New York. She suffers from advanced Macular Degeneration complicated by Retinal Detachment, resulting in profound central vision loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field of approximately 15–18 degrees. As documented by her treating ophthalmologist, **Dr. Kyle Kovacs, MD**, on April 12, 2025, Ms. Kramer's best-corrected visual acuity measures **20/320 in the right eye** and **20/280 in the left eye**, meeting the statutory definition of legal blindness under federal and New York State law.

30.     Due to her permanent and progressive visual impairment, Ms. Kramer relies exclusively on screen-reading software, including **NonVisual Desktop Access ("NVDA")**, to navigate digital interfaces, read product information, and complete online transactions. NVDA's ability to interpret properly coded websites is essential to her ability to access goods and services on equal terms with sighted consumers.

31.     Defendant **Azazie, Inc.** owns, operates, and controls the commercial website [www.azazie.com](www.azazie.com), a nationwide e-commerce platform offering formalwear, prom and homecoming dresses, women's suits, accessories, and related apparel. The Website is a primary retail channel through which consumers browse products, review descriptions, select sizes and colors, access promotions, and complete purchases.

32.     On December 15, 2025, December 16, 2025, and January 7, 2026, Ms. Kramer visited www.azazie.com from her home in New York County for the specific purpose of shopping for **both herself and her daughter** for her daughter's upcoming high school graduation scheduled

for Spring 2026. Ms. Kramer sought to purchase a formal dress for her daughter to wear to the ceremony and to select an appropriate outfit for herself as the parent of the graduate.

33.    During these visits, Ms. Kramer attempted to browse Azazi's **Formal & Evening**, **Prom & Homecoming**, **Wedding Guest/Formal**, and **Women's Suits** categories. She opened multiple individual product pages, including the **Azazie Lawrence Dark Navy A-Line Pleated Stretch Satin Dress**, which NVDA announced by product name without conveying its visual category placement. (Active tab: *Azazie Lawrence Dark Navy A-Line Pleated Stretch Satin Dress | Azazie*.)

34.    Ms. Kramer attempted to review product descriptions, compare styles, select sizes and colors, and add items to her cart. She was unable to do so because NVDA could not interpret essential content due to widespread accessibility barriers present throughout the Website.

35.    The barriers Ms. Kramer personally encountered included: • **Missing or placeholder alt text** on product images (e.g., "acc3f10," "az1"), preventing NVDA from identifying products; • **ARIA-hidden containers containing focusable elements**, causing NVDA to announce silence; • **Buttons, links, and controls lacking accessible names**, leaving NVDA unable to convey purpose or function; • **Nested interactive elements**, preventing NVDA from announcing roles and states; • **Inaccessible product carousels** that NVDA could not navigate; • **CSS absolute positioning** that caused reading order to diverge from visual order; • **Autoplaying media** running for 2,147,483,647 ms without pause controls; • **Pricing information not programmatically conveyed**, preventing her from distinguishing sale prices from original prices.

36.    These barriers prevented Ms. Kramer from identifying products, understanding descriptions, selecting required options, navigating product galleries, or completing a purchase.

12

As a result, she was **unable to complete a transaction** on any of her three visits, despite her genuine desire and concrete purpose in shopping for her daughter's graduation.

37.    A SortSite audit of www.azazie.com confirmed that these barriers are **systemic and site-wide**, identifying:

• **1,039 pages** with placeholder or incorrect alt text;

• **1,033 pages** with ARIA-hidden containers containing focusable elements;

• **1,034 pages** with nested interactive controls;

• **344 pages** with mismatched visual labels;

• pages with CSS absolute positioning that breaks reading order;

• pages with autoplaying GIFs running for **2,147,483,647 ms**;

• unlabeled links and form controls;

• missing or empty headings; and

• inaccessible product carousels and promotional banners.

 These findings reflect systemic structural and coding issues across product pages, category listings, promotional content, and navigation components.

38.    Ms. Kramer sought to use Azazie.com because it offers a wide selection of formalwear appropriate for her daughter's graduation and other family events. As a legally blind consumer, she cannot visually inspect product images or printed materials. She relies on accessible online product descriptions, pricing information, and navigation features to make informed purchasing decisions.

39.    Ms. Kramer's injury is **concrete and particularized** because she personally attempted to use the Website for a specific transaction and was personally denied equal access to

Defendant's goods and services.

40.    Her injury is **traceable** to Defendant's failure to design, code, and maintain its Website in a manner that is accessible to screen-reader users.

41.    Her injury is **ongoing**, because the barriers remain present and continue to prevent her from accessing the Website in a meaningful way.

42.    Ms. Kramer has a concrete and continuing interest in purchasing formalwear from Azazie, including dresses suitable for her daughter's graduation and other upcoming family events. She intends to return to www.azazie.com  as soon as the Website is made accessible, because:

• Azazie offers a large selection of formalwear appropriate for her needs;

• she has already identified specific products she wishes to revisit, including the Lawrence dress;

• she prefers online shopping due to her visual impairment; and

• she cannot independently evaluate products in physical stores.


**<u>CLASS ACTION ALLEGATIONS</u>**

43.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2), defined as: All legally blind individuals residing in the State of New York who have attempted to access www.AZAZIE.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

44.    Common questions of law and fact exist among the Class and Subclass, including but not limited to:

14

☐  Whether www.azazie.com qualifies as a "public accommodation" under Title III of the ADA;

☐  Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;

☐  Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to AZAZIE's information, services, and digital content;

☐ Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace;

☐ Whether Defendant failed to adopt and implement accessibility policies consistent with **WCAG 2.1 Level AA**;

☐ Whether injunctive relief is warranted to remedy Defendant's ongoing violations.

45.    Plaintiff's claims are **typical** of the claims of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—missing alternative text, inaccessible buttons, unlabeled form fields, broken ARIA references, improper heading structure, and mouse-dependent controls—that affect all Class members attempting to use Defendant's Website.

46.    Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

47.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

48.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

49.    Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

### FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

50.    Plaintiff, BETH KRAMER, on behalf of herself and the Class Members, repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

51.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

52.    Defendant's  Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

53.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

16

includes, <u>inter</u> <u>alia</u>:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

56.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

57.    Plaintiff, BETH  KRAMER, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

59.    Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

60.    Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.azazie.com  within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

61.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

62.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person

18

any of the accommodations, advantages, facilities or privileges thereof."

63.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

64.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

65.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

66.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

67.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

68.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

69.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### THIRD  CAUSE OF ACTION
**(Violation of New York State Civil   Rights Law)**
**("NYCRL")**

70.    Plaintiff, BETH KRAMER, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

72.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

73.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

74.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

75.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

76.     Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

77.     Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

21

78.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

79.     Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FOURTH CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

80.     Plaintiff, BETH KRAMER, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

82.     Defendant is subject to NYCHRL because it owns and operates the Website www.azazie.com  making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

83.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

84.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

85.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

87.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the

23

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

88.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

89.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

90.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

91.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

92.    Plaintiff, BETH KRAMER, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws

24

including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

94.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.     Pre-judgment and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.     Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated: New York, New York
February 7, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com

26